Please all rise. Hear ye, hear ye, this Honorable Appellate Court of the Second Judicial District is now back in session. The Honorable Dr. Lee McLaren presiding. Please be seated. Your Honors, the final case on the docket this morning is 2-4-0-6-8-7, Emmanuel B. Wright v. Appellate, the Grand Park District Defendant Appellate. Arguing on behalf of the Appellate, Ms. Alexis C. Karkula. Arguing on behalf of the Appellate, Mr. Dustin S. Bishop. Ms. Karkula, will you please proceed? May it please the Court, Counsel. I am Alexis Karkula, and I represent the Plaintiff Appellant, Amanda Wright, in this case. There are two issues before the Court on appeal. First is whether the trial court erred in its application of the law when finding Mrs. Wright's status. Could you lower the microphone a little bit? Thank you. As an unintended or unpermitted user of the Park District property, and therefore precluded by ability on behalf of the Defendant, Gurney Park District. And second, whether the trial court erred in its application of law in finding that the uneven and jagged tree stump left on the property that was concealed in shrubbery and overgrown grass upon which Mrs. Wright was caused to trip and fall was an open and obvious condition. First, Plaintiff's status as an unintended or unauthorized user of Park District property was incorrectly found based upon the evidence to date before the trial court. Here, Plaintiff was engaged in a leisurely, non-competitive game of badminton with her brother prior to tripping on the concealed jagged tree stump on the Park District property, which the Park District allowed to remain on the property. The badminton net was set up by Plaintiff's brother on the grass that was immediately behind his house, where the backyard of his home seamlessly meets the grass-covered Park District property, leading to the wider expanse of Prairie Oaks Park. In your brief at page 4, you state that, quote, this appeal does not involve any statutes. What about the Tort Immunity Act? That act, absolutely, is something that's up for discussion. And how do you get around the Tort Immunity Act? With respect to the permitted user or intended user? Wilfo and Wanton. Well, so Wilfo and Wanton was not decided upon by the trial court. The trial court instead ruled upon two of the three arguments raised. We can confirm on any basis supported by the record. Absolutely. So what evidence is there, what facts are presented, that would show that the Park District engaged in Wilfo and Wanton behavior? So the Park District allowed that tree stump to remain. They created that dangerous effect by its improper removal of a tree that had previously fallen. There's testimony from the Park District employees that state that that tree stump should have been grinded down and extricated and removed, as well as the weeds that grew around it which concealed the dangerous nature of the tree stump. That should have all been landscaped and trimmed down so it was visible to the public. That was not done here. And the testimony of the Park District employees supports that that was consciously done by the Park District employees. But the record showed that there had been no complaints with respect to that stump in the two years after the tree was fallen, correct? Correct. There was no record of complaints for that tree stump. Okay. So how can we infer from the circumstances that there was any Wilfo and Wanton behavior? No reported injuries, no accidents, nothing that would suggest that the stump needed to be removed. It was the Park District policy and procedure to remove that stump completely. They failed to do so. And the Park District employees testified that the reason why that stump was ultimately removed was because of the danger presented to the public as a tripping hazard. And they consciously chose to not. Does the record give us any information about how this relatively small piece of property, the narrow band of property behind this house, is used by Park District invitees? I mean, it's not a very large or obvious area, is it, within the nature of the park? It is not marked as a trail. There are no signs posted, and there's no designation as to the purpose of that area, but for representation that it is a walking path that leads to the greater expanse of the Prairie Oaks Park and the subdivision. So when they say under policy it would have been removed, wouldn't the policy also indicate that the reason it would be removed is because it would be a likely area that would be used by park invitees? Correct. And today you're telling us this is not necessarily the case of this particular plot of land. This particular plot of land was intended for use by the public and invitees on the Park District property. But there hadn't been any complaints according to this record. Correct. There had been no prior complaints to our knowledge of the presence of that stump. However, the existence of prior complaints is not automatically required to have a finding of lawful and margin conduct on behalf of the Park District here. It has some indication, however. Those complaints, okay. Yes. That's all I have on that issue. With respect to whether or not the plaintiff was an intended or permitted user of the property, we look to the intent of the Park District, not the plaintiff's intent, right? Correct. And the intent of the local public entity must be inferred from the circumstances. And one of those circumstances, an important circumstance, is whether or not the entity has enacted an ordinance governing the use of the property. And here there were not just ordinances but Park District rules, right? Correct. So under the rules and under the ordinance, how was the plaintiff a permitted or intended user of the property? Well, in this case, the ordinances and rules that were applicable to the recreational property here, they were not posted and there's no specific rule that precludes the participation in a badminton game. That was not an organized event. It wasn't a group event. It required no permits. And it is on recreational property. Doesn't the ordinance say you cannot erect any equipment without a permit? I'm paraphrasing. Post Section 5.01g, is that the ordinance to which your Honor is referring? The trial court noted that the Gurney Park District Ordinance Code Section 2.14 required written authorization to install play equipment on the property. Yes, Your Honor. It is plaintiff's and appellant's position that as far as the intent behind that rule or ordinance is concerned, it did not apply. In this case, as the badminton net was a temporary net, that structure, if you would like to call it that, did not amount to that which is referred to or intended to refer to by the ordinance, such as a net, a lacrosse net or a soccer net in larger structures such as those here. This was a badminton net that was rolled up and removed and it did not remain on the property. Mr. Becker testified that the stump was obvious, that it was open and obvious, that you could see it. You could also see the leaves and the shrubbery growing. Yes. But the plaintiff decided when she went to pick up that, I forget the name of it. The birdie. The birdie, yeah. She walked right directly. Shuttlecock. Your shuttlecock. She walked directly over that area in thinking she was just going through shrubbery. And you can see in the photographs, the colorized photographs, that she could have taken either path around it to pick up the birdie, but she walked right into the stump. Yes, Your Honor. So what's your argument that it's not open and obvious, that there was some kind of hazard there, where it had been clearly caught, and whoever caught it went around that area? As far as the open and obvious argument here, plaintiff's contention is that the nature of the stump, the dangerous nature of the stump, the jagged edges were all concealed by the overgrown shrubbery, and while the grass surrounding that area had been trimmed, the appearance of the overgrown shrubbery and leaves appeared to the plaintiff as though it posed no dangerous risk to her to step into or around that stump, whereas had that shrubbery or overgrown grass been removed or cut down, that would have allowed her to appreciate the risk involved in the jagged edges of the stump. Okay. We can make our own determination. Do you agree it's an over-review as to whether or not the photographs show a hazard or an open and obvious condition of the property? I believe, yes, Your Honor, but when there is a dispute between the parties regarding the visibility of the dangerous defect, that that would be the obviousness of that dangerous hazard would be something that would be left to a jury to decide. That's a factual issue. Yes, Your Honor. Did comparative negligence raise its ugly head in this case or not? I believe that there could be an argument for comparative negligence here, but again, as far as any negligence on behalf of the plaintiff, that would be something that would be... I'm sorry. Could you speak up a little louder so that I could hear you? Yes, Your Honor. I apologize. As far as any type of comparative negligence on the plaintiff's behalf, that would be something that would be left for question of fact. For the jury. Yes, Your Honor. Thank you, Your Honor. And also, just to direct Your Honor's attention to the case of Sullivan v. City of Hillsborough, while this is persuasive, it concerns a similar type of permissible or permissive and intended user argument that plaintiff argues is seen here in this case. In Sullivan, there was a swimmer who was water skiing 30 feet from the shoreline, encountered a broken pipe or bent pipe, and was injured. The ordinance in that case required ski... or prohibited skiing within 75 feet of the shoreline. However, the court still found that the plaintiff was an intended user at that time, despite that ordinance. Can you just briefly address counsel's argument that your brief is deficient? Your statement of facts is one page, one paragraph, and the record's 900 pages. Yes, Your Honor. Plaintiff cited to the facts that she believed were the primary points that we needed to highlight throughout the entirety of the brief. And that's sufficient, one paragraph is sufficient for us to review the facts? Your Honor, I would hope so. However, I understand that this is a very voluminous record, and a more comprehensive statement of facts could have been helpful. I have a little concern about all the notifications contained in the signage, indicating that basically, unless you're a wild animal, you can only do certain things on premises that have been indicated on the signage in general terminology. And that the argument raised by the Park District is that what your client was doing was not consistent with what the signage gave notice of. Essentially, it's suggesting that you're either assuming the risk, you're a trespasser, or you're not an invitee who is entitled to a standard of responsible activity on the basis that you aren't an invitee, or your client isn't an invitee. So if I understand Your Honor's question, are you asking what plaintiff represents herself to have been at the time of this incident as an invitee or a trespasser? I believe what I'm suggesting to you is that in this day and age of disclaimers, it's almost impossible to do anything anymore without some form of an assumption of risk insofar as what you do. And so, if what the Park District has notified the people who walked through its property is told as reasonable, then why should we impose, or why should the trial court impose liability on the basis of general negligence law when there are disclaimers? And the disclaimers are such that you haven't alleged a cause of action based upon the disclaimers. So Your Honor, the disclaimers or signs, postings, rules that limit certain activities on the Park District don't include, they're very comprehensive. They identify specific sports and specific activities such as basketball, golf, soccer, volleyball. Badminton is not included. It says any and all, doesn't it? It's not limited. Go ahead. Thank you, Your Honor. I believe that as opposed to any and all, the intent behind that ordinance is not to encompass every single type of recreational activity you can possibly participate in in a Park District property. The sports that are specified are those that can cause significant harm to those around them, other park goers, and pedestrians by nature of the sports such as golf, an errant golf ball, basketball, soccer, football. Whereas here, the activity or the sport itself does not pose that type of greater risk. And the net or the game itself isn't what caused the injury here. It was the jagged stump that remained and was concealed from view. Well, you indicated that the issue wasn't so much that the stump was concealed. It was the jagged edges of the stump. I mean, the stump's a stump. If you know there's something there, why would you walk into it, whether it's jagged or not? I mean, I might check it out if I was going to sit on it, but if it's in my way, I'm going to walk around it. Why couldn't she have walked around it? And, Your Honor, as far as the nature of the stump is concerned, because it was concealed from the plainest view as a result of the overgrown shrubbery and the grass, she was not able to appreciate the risk that it posed as opposed to being able to visibly see the jagged edges and the nature of the stump itself. I have no questions. You will be given an opportunity to make rebuttal. Thank you. Thank you. Mr. Fisher? You may proceed. Thank you, Your Honors. My name is Dustin Fisher. I've worked very proud, along with my colleague Mike Hartigan, to represent the Gurney Park District in this matter. There are several discrepancies with the plaintiff's presentation that I want to make sure that I clarify. But in general, our position is that the trial court had this absolutely correct. There were no real questions of material facts here. One thing I want to, I guess, start with is there are some misconceptions about this area of the park itself. And I think maybe I didn't do a good enough job of identifying that in the statement of facts. I want to make sure that I sort of clarify this. So this subdivision that was generated has multiple entrances into different areas of a greater park system. In order for patrons to get into the park, there are sort of paved walkways with traditional-looking entrances. This would prohibit people on the west side of the subdivision to sort of easily get into the playground areas. So in this park, which is sort of nestled between a residential area, there is a general path or walkway. I think both, it's fair to say both counsel and I had a difficult time describing it in the pleadings. But essentially, to your honor's point, this is just kind of a, you know, maybe 20 to 30-foot stretch of property where there really isn't any active recreational activities. You mean stretch or width? Well, so width. So the depth between the houses to the north and south, it's approximately, I don't know, 30, 40 feet. I'm not great at estimating myself. They're very small, so much so that if you do look at the photos that were included, the volleyball or badminton net itself takes up about 95% of that pathway as it was attached a little bit to the Plankton Brothers' property all the way over. So we're not talking about a significantly wide stretch of land. And in there, this is an area for passive recreational use. It's very clear from not only the photos, but when you're there, there's a rocky border area, there's ground cover, there are trees, there are absolutely areas of nature. It's approximately, I would say, six or seven house lots wide to an actual path. Directly next to that path is a large open space where, yes, we have permits, things like soccer games, neighborhood parties, all of these activities. And this is the very nature of this case. How do we, as a park district, when we believe the public policy is very clear, we want to have open parks, we want to encourage people to get there, we don't want to fence off walkways so that people can't just walk onto our property. And when we're doing that, we want to do so in a way that we can somewhat control the behaviors of the public or at least identify what is okay. Also, I don't know that you need to tell us what your policy is relative to how you want the people of Gurnee to entertain themselves on your premises. I'd be more concerned with being told whether or not the trial court made findings that there was no indication of negligence on the part of the park district or whether or not there were notifications that put the onus on the plaintiff to go where she was looking or look where she was going. Well, to that end, certainly it was not disputed in the underlying court. The ordinances in question were published and available not only in book form but also on the website. The park rules for all parks were published on the website. Now, behind this person's home, we did not have a sign. We did not. There were signs at the entrances to the park, which are about three houses over from where he's at, that have the entire list of general park rules, not ordinances but park rules, in effect for Puerto Rios Park, including the sports are allowed in designated areas only, sports and games in designated areas only. And our contention with the trial court, and it is today, is that, you know, we believe that this was both unintended and unpermitted activities here. As Your Honors pointed out, you're not allowed to build things on park district property. You're also not allowed to prevent other people from using the pathway, both of which have never really been disputed that that's what she did. The dispute has been more about whether or not badminton was included within the types of sports that are prohibited in this area. Even in plaintiff's briefs in this case, she, in her argument this morning, she acknowledges that baseball, softball, lacrosse, golf, these are all prohibited in this area of the park. Our argument with the trial court, and today, is simply is that's a pretty express reveal of what the park district's intent is. Now, there are times when someone applies for a permit that we can give permission or that we will allow these activities. Certainly, and when we do that, we're then allowed to take additional steps to make sure that the area that these are played in is adequate. At that point, this gets back more into the Wolf on One argument. At that point, we're taking some responsibility for the activity. In this case, we have people who, while not trespassers because they're allowed on the property for passive recreation, they're just co-opting it usually as part of their yard for a family gathering. That's exactly what this was. That's very common, isn't it? It is common. And, you know, when you know that people are going to be using the property as an extension of their yards, doesn't that suggest that there is some responsibility to remove hazards? It certainly suggests that there's always a responsibility to remove hazards if we're considering this area a hazard, which I do not. Certainly, we want all of our materials to be safe at all times for users. However, there's a couple of different ways to look at it. One ideal argument is more going to a general negligence argument, not necessarily a 3102 argument, whereas it is very, very common to see bicycles on the roadway. Those are permitted uses of the roadway. They're not intended uses of the roadway. Despite having ordinances and laws passed that say that bike riders are absolutely allowed to have all the rules of the roadway that we have and motor vehicles have. The reality is that this park was never intended for this type of athletic endeavors. And then sort of generally speaking to whether or not we needed to take care of the area itself, I completely agree that we want to stop hazards from being present where people are going and should be expected to walk on these pathways. So what do we do to prevent that? And I'm not trying to go against your honor's previous admonition, but the policy here is do we want parks that are perfectly maintained and flat like a golf course where you're playing golf? Or is it okay to have natural areas of parks where you have rock borders, you have not only stumps but fallen trees, and you have creek beds? You know, there's not a great answer for that other than that's just a pure policy question. In this area where this was at, there was absolutely a clear walkway where you're not going to encounter any rocks, you're not going to encounter any ground cover, you're not going to encounter any trees. And there are areas where you're going to. Just outside of the photos, and you can see a little bit of it in some of the further out photos, there's absolutely rock features and plants that are left in a natural state that are unmaintained entirely. The park reserve comes by and mows and maintains this area of the walkway so that people can get through to the greater park system. I mean, that to me shows the conscious regard for safety that we have for our patrons. We are making sure that they have an area to cross this in a safe path, and then we're telling them, hey, in the rules. Now, we do cages and the way to preserve nature stay on the marked path, but we're telling them, hey, stay in the maintained areas. That's what we're trying to tell them. We also have ordinances. I did cite the one that do indicate that also you're not supposed to be walking over the landscape areas. These areas are areas where if you're getting on them, you're doing so for a certain reason. You know, again, maybe someone wants to take their kid down to a creek. That's not going to be level ground. And if there's a value to that, crossing the creek on a downed tree, I think there is. Other people could disagree with that, but the reality is that's how we maintain that and provide this for the citizens of Good Eight. Could you distinguish Brooks or discuss plaintiff's reliance on Brooks? I'm sorry, which case? The third district case, the distinguished Booth v. Township of Wayne. Well, so to answer that question, I think after a lot of eight, all cases on 3102 need to have some review. Although it wasn't cited in this brief, for instance, she mentioned the Springfield case, which is the skiing case. The Brooks case, I'm trying to remember the fact pattern on that one, so I apologize. Which case was that? That was from the third district, and I put a note to myself to ask counsel to distinguish Brooks. Well, at the top of my head right now, I do apologize. I don't remember which town was Brooks. It was a third district case. So what I would say is that as someone who does a lot of 3102 law now with Park Street, the Alabi case in December of 2023, in my view, very much changed how we have to evaluate 3102 cases generally. And what I mean by that is previously there was a question on historical use or how do we determine what the intent is from a public entity when there's not express prohibitions or express acknowledgments that someone can use property in a certain way. And what Alabi says is that simply that you have to look at the property itself and these affirmative physical manifestations of intent. And while I apologize, I don't remember the fact pattern in Brooks. Brooks was the city of Peoria, which is cited in the claims reply brief. Yes, that's the case in which the child was using sidewalk with a bicycle. So I apologize. I do know that case. And while I would say that that's – I would say there, the primary distinction is, is that Alabi basically said these old foreseeability argument cases, which are cases on whether historically something had been used. And so historically, while there wasn't a directly on-point statute in that case that said, they said historical use, you saw kids on these sidewalks. The city knows.  Right. Now, there's always been a discrepancy in that case law. And we started first with Midwest versus Britain, in which there was an ordinance that said you couldn't use motorbikes. And in that case, the argument was is that we don't need to show intent. If the intent is clear from an ordinance, the fact that people had historically used it is really irrelevant. Going to the intent and then it goes to the permission, whether someone is a permitted user of that parkway or of that sidewalk. And by my view, Alabi has sort of overturned, not directly, but certainly the rationale that supported the Brooks case. And how it did that is it said, look, you have to look at these physical affirmative manifestations of intent in order to determine whether this child could be on the sidewalk or not. And, in fact, the first district just had a case, and I apologize, I believe it's Jones versus the village of Palatine, in which that was the case. There was a teenager on the sidewalk in which a village ordinance gave him permission to use a sidewalk for bicycles in certain capacities. And what they said was, that's just a permitted use. The sidewalks themselves are for pedestrians, and the intended use of that is only for pedestrians. And that's how I think Brooks would be decided if that fact pattern was today. Now, there are ways to do this. You would still have to do the full analysis. If there was not an ordinance or an express prohibition of children on bicycles on the sidewalk, you would have to look at these affirmative manifestations of intent. Why are people doing that? I think where that gets messy is in historical use. Here, in this case, there's none of this, and none of those even argue. There's no historical use of badminton or any sports in this area of Prairie Oaks Park. There's no statements of intent even identified by the plaintiff that suggests that anyone would look at this area of the park district and say, this would be an area for badminton. Now, could people do that? Of course. And I guess it goes back to the Willful One argument, but in the record, is when this event occurred, which was the early days following the reopening of the parks following the initial COVID lockdown, one of the things the park district was doing was going around and stopping people from setting up volleyball nets and taking them down. It wasn't at other parks. We had rules. We were enforcing them. We were certainly maintaining the property under unique and difficult circumstances in a way that it caused no complaints to the park district, no past accidents. We had people out at that park on a weekly basis talking with residents. None of them had ever mentioned this area as a problem, and that's because, I think as your honors alluded to, it was an absolutely obvious condition of the property. One thing I would argue with Plaintiff on today is that the record is clear. There wasn't a policy on stump removal. In fact, the deposition testimony from more than one employee was, they have to take this on a case-by-case basis. A defect, a tree root, or a stump that's directly into a walkable area is something that we'll take care of right away. This was an out-of-the-way area, 24 to 30 inches away from a rocky outcropping with ground cover. There was also, and this is in the record and perhaps I should have made a bigger deal out of it, these are all buried utilities there. There is a photo in your packet that shows when they came by just how many utilities are underneath this stump. There is absolutely a reason for everything that was done here. There's certainly nothing that shows a conscious disregard for the safety of the patrons of this park district. Every step that we could do, it's true we did not remove it, and it's true on that Friday we did not trim specifically around all sides of this tree stump. But every single person that was deposed indicated that they saw the area. The plaintiff herself admitted that she knew it wasn't an area of flat, earth or grass. She could see that it was distinct. She thought it was a bush. And our contention with the trial court and this today is that she was aware of the condition. And the only question of fact is whether her subjective viewpoint is that she didn't see it was a jagged stump as opposed to thinking it was a bush. And our point is the risk from stepping into a bush, knowing that it was there, thinking it's a bush, that is still an open and obvious condition for which we do not owe a common law duty either. Counsel, will you close your time zone?  Sir, as I indicated, I do not believe that there were any questions of material fact in this case. The trial court was absolutely correct to enter summary judgment. And thank you for your time. Any questions? No. Sue, any questions? No. No, thank you. Thank you. Thank you. Ms. Kirkwood. Thank you, Your Honors. I would just, if I could, address a couple of the points that were just discussed by counsel for the Park District. As far as the permissive recreational use argument for this particular part of the Park District property, it was described as a walking path. The dangerous condition that was on the property, regardless of how many feet away from the edge of the middle it was, was in the direct path of pedestrians and other invitees that are on this property. Now, where this badminton net was set up was right in the backyard of the plaintiff's brother. It appeared almost to be a seamless extension of the brother's yard area. And it is historically reasonable to expect people to play backyard games, such as badminton. It's a small net, it's a small activity. And as such, following the Brooks court, it would be unreasonable to argue that this type of activity was unintended in this particular area of the Park District property. There's also, as counsel said, there's no ordinance or expressed prohibition against engaging in this backyard game of badminton. And as such, the historical observations and the historical use of this type of space should be taken into account under the facts of the case before this court. And again, just to circle back as far as the open and obvious condition of the hazard is concerned, the visibility is disputed of that jagged stump that caused the injury and caused Mrs. Wright to fall. And as such, because that visibility is at issue, it is a question of fact that should preclude summary judgment in this case. I do have a question. Doesn't the record indicate, though, that Mr. Tobias's backyard would not accommodate that net if it was to be, I guess, what would that be? Perpendicular to the, I mean, the net had to go from the house out as opposed to going across the house backyard because there wouldn't have been enough room to play, correct? I apologize, Your Honor, I don't recall that specific testimony. However, I do know that part of the yard was slightly sloped, so it was easier to position the net, as it were, right on the line of the backyard in the Park District property in that area. And he's lived in that house long enough to know. Maybe his sister hasn't visited that often, but he's aware of generally where that property line is, correct? Based on his testimony, I can't recall at this time, but I believe he was aware. All right. But he still helped in putting that net up there that is what has caused our problem here today, or that day in particular. Isn't that also correct? I believe that he did erect the abandonment net, but as far as the stump is concerned, he did call and report that downed a tree that was removed by the Park District a couple of years prior, but then that tree stump remained on the property following the removal of the rest of the tree that had fallen. Thank you. Thank you, Your Honor. And based on the arguments asserted in the appellant's brief and the arguments stated here today, plaintiff appellant respectfully requests that the case be remanded for further proceeding. Any further questions? No. Thank you. Thank you. All right. We will take the case under advisement, render a disposition in appropriate order. This is the last case in the call. The court is adjourned.